The next case on the morning docket is 517-0399, Grater v. The Court of Claims. Counsel? Mr. Redemaker? Did I say that right? Rodemaker. Rodemaker. Sorry. It's okay. All right. You may proceed when you're ready. May it please the Court, both the counsel, good morning to everybody in the room today. My name is Paul Rodemaker, and today I have the distinct honor of representing the petitioner of Appellants, the Grater family. I think the biggest issue before the Court today is the violation of Rule 213 and due process. I think it's clear, based on the record, that there was a 213 violation. This matter was originally in the Court of Claims, and the discovery order set a date, February of 2010, and interrogatories were sent prior to that date asking for 213 witnesses. In order for you to move ahead, I think we can all presume that there was a clear 213 violation.  So to the point of Rule 213, whether or not 213 contemplates due process, it's appellate's position that the answer is yes. Here's why. At the heart of every appeal, motion, writ, the question has been asked by each court whether or not due process is a consideration of Rule 213. Unfortunately, Your Honors, I cannot provide you a smoking gun under Illinois case law that says 213 was enacted to protect due process. It simply does not exist as far as my research can find. What I can do is point this Court to language in each case that I've cited to in my brief. These cases all find at the end of a Rule 213 violation consideration that a fair trial cannot be had when this rule is violated. That's in every holding of every one of those cases. Isn't that very fact-dependent, however? It is fact-dependent, Your Honor. There are several facts, including surprise to the adverse party, diligence of the adverse party in requesting the information, several factors that I believe the briefs have cited to. And it is very fact-dependent. But I think in this case, when you consider the facts, I do think that this is a Rule 213 violation, as the Court has said. And I think that when you look at the facts of this case, it did deprive the greater family, the petitioner appellants, of a fair trial. I'm really having a tough time. I want you to tell me specifically why. Due process. Why? Why, yeah, due process. Why it deprived them? Because Mr. Wessel, his deposition was taken, right? Right. Where did he go beyond his deposition and surprise you? Or unfairly prejudice the putting on of your case? So in order to answer that question, Your Honor, I think I have to go back a bit. The reason that the prejudice occurs is because Mr. Wessel, although he was involved in a discovery deposition, potentially an evidence deposition of the underlying trial court case versus CSX, the railway. He was, that deposition was taken. Mr. Wendler, part of the attorney for plaintiffs in that case, was present. But I think it's important to know that at that point in time, there was no reason for Mr. Wendler, the plaintiff's attorney, or Mr. Arbus, the plaintiff's attorney, to cross-examine Mr. Wessel in an adverse way. So what you're saying is you would have taken obviously a different tact if you were taking it for the purposes of the suit against the state. However, I guess the follow-up on Justice States' question is you became aware that they intended, the state intended to use the same or at least some of the same witnesses at least a year before you went to hearing, correct? I believe that's true. I believe the record reflects that. So I guess the query in my mind is you took a pretty big gamble in not at that point setting the deposition. So if I may, Your Honor, although I think that is true, I think that the more or less once the violation 213 was discovered by the state, the Illinois Department of Transportation, I do think that they tried to remedy the situation by coming after the deadline and answering the interrogatories with three names, Mr. Wessel, Mr. Stumpf, and a third who did not testify. His name eludes me right now, but it is in the record. And even that 213 response was deficient. It simply said that they will testify with regards to the intersection at question. What was the time interim between when that occurred and when you actually went to court? If I could have just a moment, Your Honor. I believe it was May 21st of 2007, Your Honor, that they disclosed those witnesses. I think it was June 8th. June 8th. And they disclosed. And it was in 2011 that the hearing happened. So I would agree that it was approximately a year in between the disclosure and the trial. So they were not only in violation of the disclosure. They were also in violation, I guess, of the case management order. Correct. And the reason, and just to touch upon the issue of the language by it being a gamble, the case law is clear in the Fifth District and other sister districts of this court that the 213 is there so that the party who is receiving that information can then rely on it in the preparation of their case. There is no question about that. And there's no question there was a serious violation. The question is the court has the opportunity to fashion a remedy, and it did. And it may not have been the remedy we would have fashioned or the court below us would have fashioned, but they did. And there was an opportunity to be heard at that time, and there was the opportunity to take a deposition, if that's what you thought you needed to do, for over a year prior to that time. And in addition to that, the court is under, I think it's 218. They have the discretion, or they're actually told, that they can liberally apply the management order for substantial justice, something like that. Correct. So that's what I'm talking about, the gamble. I mean, if you talk about due process, you have to have the opportunity to be heard and have a fair trial. To attempt an answer, Your Honor, I think more or less the due process violation, that gets to the heart of what I'm talking about, of the opportunity to be heard and whether or not it was meaningful. That's what the case law that analyses this sovereign immunity exception requires. It requires that the opportunity to be heard at a meaningful time in a meaningful manner. I think, and I think the facts of this case show, that when you violate Rule 213, although I do completely understand that there was some opportunities that perhaps Plaintiff's counsel at that time had passed up. I understand that. But I think when you look at that and you consider the overall scheme of the hearing that was had and the remedy that was fashioned, I don't think that petitioner appellants were given the meaningful hearing that they are required to be had, that's required to be given to them under the case law. Well, let's not talk in so vague. So when you talked about the remedy that was fashioned, are you talking about take their deposition in the next day? Correct. Okay. Well, by then your trial strategy is completely gone. You're ready for trial, right? Correct. Okay. But what about that year? I mean, there are ways to alert the other side, and even there was a court conference. This is what concerned me. There was a court conference where one of the parties wanted to extend discovery, and the court said no. At that time, there was nothing mentioned in the court about a late disclosure. There was no question raised with the state, are you going to use these witnesses? I mean, there was this 218 conference, although it was a court of claims, but a similar kind of 218 conference that nobody talked to the judge about these late disclosures. That's the concern. Taking a deposition the day after you find out about the violation and you're ready for trial, your strategy is set. So I'm not so sure that's fair. But how about that interim time? So I think that interim time, and I can only speak secondhand as to what was going on at this period of time, more or less. I mean, just generally, what do you think? I mean, do you think that the rule is so rigid that you can sit on your heels? Do you think that the Supreme Court says, I mean, Supreme Court rules are orders. Right. And they violated them. Do you think that the other side can kind of sit back and wait? So I do, and here's why. The case law that I've cited numerous times, I could talk blue in the face about the 213 case law. It says it's mandatory and it requires strict compliance. And that is because when those 213s are sent out, if you miss a deadline, it's strict compliance with that deadline. If you don't provide any witnesses in a 213 interrogatory, that sends a message to the court, and this is in the Olszewski case with the rationale it sends a message to the court and the adverse party that sent you those interrogatories, that you are not going to call witnesses. That's what the case law says. So I do think, although in the interest of courtesy to another party, I think that it should have been brought up. I think somebody should have said, hey, you didn't disclose these appropriately. Are you going to reopen discovery and do this the right way? I think that conversation should have been had. But I don't think it's required more or less to answer your question, Justice, that I think a party can rely on a 213. And I think if a party violates a Rule 213 and doesn't answer anything, I think you can hold them to that. I think you can sit back and I think you can hold them to that 213 interrogatory. Do you know what happened between the deadline for calling witnesses in this case, which was, I think, February 1, 2010? Do you know what happened between the deadline and those seven months later and the disclosure, when the disclosure happened? I mean, was there work being done? Was the plaintiff expending money, taking depositions, creating a strategy for her case? Do you know what was being done during that seven-month delay? I can say truthfully, Your Honor, I don't know. I can only speculate as to what was being done. I would imagine that what was likely occurring during that seven-month time period was we were essentially more likely waiting for the hearing. Most things that had been done during the CSX underlying trial case, I think that probably the plaintiff's counsel intended to rely on most of that information regarding the party witnesses. So I don't – I can't speak as to what was occurring during that time. I apologize. Just to move – there's a second issue I'd like to just discuss with the Court, and it's the remedy fashion. And I think, Justice Gates, you touched on it a little bit, saying that a 24-hour delay of a trial more than likely is probably not fair. And that's because, as I've said, the 213 is something that a party gets to rely on in coming up with their trial strategy. At that time, when the motion limine and all the issues came to a head in front of the Court of Claims Commissioner, he said, well, why don't you just depose them tomorrow and we'll delay it a day and come back afterwards. But how do we separate that out from the almost a year, whatever, before if we're talking – if we're talking about prejudice and surprise? How can you claim the day of trial that you are prejudiced and surprised when you knew about it over a year before? I think, Your Honor, the only way that I'm able to claim prejudice and surprise is in the fact that the 213 was blown originally. And the case law says you get to rely on that discrepancy, more or less, in the facts. If a 213 is not filed and the appropriate timeline discovery is closed, you get to say you didn't file anything with the Court, you didn't file anything with me, you have no witnesses. I think that's the problem. I understand that they came afterwards and said, well, we're going to call these three witnesses and they're going to talk just about the intersection question. I think that's true. But it doesn't change the fact that the law allows the Plaintiffs' Counsel at that time to say you don't have any witnesses and I intend to bar those witnesses, and that's sound trial strategy. But when did you file your limine regarding the witnesses? I believe it was September before the trial. And? It would have been just a few months prior to trial and it was taken up the day before the hearing. So you didn't ask for a hearing on the limine prior to the trial? I do not think that they did, Your Honor. I think that's true. So all of this, the Rule 213, what I want to try and make clear as much as I can is that although you cannot appeal the merits of a court of claims case, you can appeal due process, and I think this is an instance where it is a due process violation. I think that when you look at the fact that due process deals with fundamental fairness, fair trials, and everything that comes with a fair hearing, and I think when you look at the fact that the case law surrounding 213 concludes that if you violate 213, you do not have a fair trial. I think when you take those two things in connection and you connect those two dots, I do believe that 213 violations in Rule 213 do consider and contemplate due process. And I'll move on just to the third point briefly. Appellants, we've asked this court more or less to consider the constitutionality of the Court of Claims Act. I will be the first to admit that potentially that is a little overzealous. I think we overstepped in that respect. And I will say that if this court was going to overturn the Court of Claims Act, I think they would have done so previously. So you're saying that you overstepped and you're basically conceding you don't have an argument for attacking the constitutionality? I do think we need to concede the constitutionality of the Court of Claims Act. Well, I appreciate that, even though it is at a late date. I apologize. But I just want to touch upon just briefly in conclusion of this case. The Court of Claims, although it cannot be appealed on the merits, it can be appealed on due process. And I think we have a due process violation here today. I think Rule 213 contemplates due process in its actions. We would ask the court to reverse the motion of summary judgment that was granted in the Circuit Court of Claims. We would ask that it be remanded back to the Circuit Court for further proceedings on the writ and for a determination as to whether or not a fair trial can be had in the Court of Claims or in potentially the Circuit Court. Thank you. Okay. State. Thank you. Good morning, Your Honors. May it please the Court, Assistant Attorney General Honor Moore, on behalf of the Court of Claims. The only issue for this Court to review on appeal is whether or not the plaintiffs received due process in the Court of Claims. And it's clear that they did. This Court should affirm the Circuit Court's judgment for three reasons. First, the plaintiffs received due process on their underlying tort claim because the Court of Claims conducted a full evidentiary hearing on that claim. Second, the plaintiffs received due process on their argument that the Department's witnesses should have been barred because they raised that argument several times below and the Court of Claims considered it but rejected it because it was reasonable for the Commissioner to decide to allow the Department's witnesses to testify. And third, when Rule 213F is not strictly followed, it does not automatically equate to a due process violation and it does not automatically require that those witnesses be barred. Due process is satisfied by an orderly proceeding where notice is given and the plaintiff has a meaningful opportunity to be heard. Let me ask you this. Do you think that a Rule 213 violation can ever rise to the level of a due process violation? It potentially could, but that's just... Failure to follow Rule 213 could rise to a constitutional violation in Illinois. I'm sorry. Actually, I would say that no, that it could and it would really depend on the facts of the case and whether or not the plaintiffs had a meaningful opportunity to be heard. So in some circumstances, as Justice Chapman indicated, it would depend. It could be very fact-specific, but perhaps it could rise to a violation. Exactly. So if you look back to the due process standard and look to whether the plaintiffs had a meaningful opportunity to be heard, which this Court has interpreted to mean the opportunity to present your argument, to present witnesses and to confront the witnesses of the opposite side, and if there was a circumstance where Rule 213 was violated and the plaintiffs were unable to present their argument, then it could potentially rise to that level. But it's important to remember that that's not what occurred here. Wouldn't we pose a hypothetical then along that same vein if we had a somewhat different case in that there hadn't been the prior suit against CSX and the disclosure and the depositions and it was all disclosed the day of trial, day before trial, that you were going to use these two experts that the plaintiffs had no indication of or knowledge of? Do you think that would have arisen to a 213 violation that would have implicated due process? Potentially, again, it would turn on the facts of the case and whether after that situation the plaintiffs were able to present their argument. Let's say that the Court did exactly what they did here, which was to offer them an opportunity to depose them that day. Again, that's just not the situation which occurred here. I'm aware of that. I'm aware of that and you're avoiding my hypothetical. What I would like to address is the fact that here not only did they have 24 hours. We're aware of that, but do you think that would arise to a violation that could be considered a due process violation? Potentially it could if they could not adequately present their argument because of that. But it would depend on which witnesses were testifying the information that they ultimately provided at trial and whether the plaintiffs were actually able to effectively question those witnesses at the hearing. So, again, it's an extremely fact-dependent analysis. And here the commissioner was reasonable in allowing the witnesses to testify because they were disclosed about a year and a half before the hearing. And not only were their identities disclosed, but they were disclosed in response to the plaintiffs' interrogatories that they were intended to be called at trial. And that's why this situation … The subject matter of their testimony was, I mean, not found, not revealed. It was pretty vague. Yeah. I mean, you can state your opinions. Well, actually, James Russell's deposition testimony from the related circuit court hearing was attached to that disclosure and it was disclosed what the contents of his testimony would be. And regarding Ms. Strumpf, yes, she was just disclosed as a department employee. But, again, the court of claims allowed the remedy of allowing the plaintiffs to depose her to potentially gain more information about what the substance of her testimony would be. But the deposition was going to occur the next day after the plaintiffs had spent years developing a strategy, a trial strategy. So you think deposing somebody the next day and letting them say whatever they want without any notice of what it's going to be is fair? Well, they were not actually allowed to say whatever they want. The plaintiffs were effectively able to limit their testimony so that she could not testify to any opinion, for example. And her testimony was limited to the department's procedures in conducting traffic studies. You don't think … I found that very interesting, by the way. You don't think that if a witness testifies to departmental procedures, traffic studies and things of that nature, you don't think that's expert testimony? Do you think anybody could testify to that? Not anybody could testify to that, but she certainly had knowledge of it as a department employee. But what's important here … I know, but my question is if you or I work for … you work for the state, okay? Do you think that you can testify as to what all the rules and procedures are for the attorney general's office? I personally could not testify to that. Right, so you have to lay a foundation that she was capable of testifying to that information, right? Yes, and they could have done so. Who say? The plaintiffs could have. No, my question is you got that … the state got that testimony in, right? Yes, they did. And so in order to do that, some foundation had to have been laid. So it was curious to me that everybody just calls her an employee. But truly, she was … Controlled. Controlled. She was a controlled ex … thank you. She was a controlled expert witness under the rule. Yes, and as we've discussed, Rule 213F was violated. It was not strictly followed. But if you look at Rule 213F … I think it's 3. Yeah, it is 3. They used the word expert. I mean, I'm old enough to remember when this was put together, this rule. And 3 is controlled expert witnesses. And I found it very interesting that the state takes the position that she was just an employee. She had a lot of technical information that was not disclosed, not available, but was introduced at the hearing. Well, it was available because, again, the plaintiffs knew that she was … that the department intended on calling her a year and a half before the hearing. And instead of alerting opposing counsel, hey, there's a problem here. Discovery is closed and your disclosures are late and we don't have the opportunity to get more information. They didn't work with them to try to alert the court to the fact that these witnesses were disclosed untimely. They didn't attempt to get the depositions of Miranda Strumpf or James Wessel. And so this isn't a failure of due process. It's really on the court's part. The plaintiffs had the opportunity to attempt to get this information prior to the hearing. And they did not do so. So you think that it was the plaintiff's burden when the state was 7 months late and only disclosed names and a few pages of a deposition. You think, then, the burden shifted to the plaintiff to pursue the state and the information that was going to be provided, despite the fact that the rule clearly says that the burden is on you. I do not think that the burden shifted. That's not the position that we're taking here. I do want to come back to … Well, you say that the plaintiff could have done this, the plaintiff could have done that. The original burden is on the state or the party. And that's true. I just want to correct one thing. The witnesses were not disclosed 7 months late. Discovery closed in February and they were disclosed in June. So it was approximately 4 months, not that that changes the outcome, but just to clarify that. My question is the burden. Also, it was not the burden, but it was unwise strategy to assume that these witnesses would automatically be barred because the state had made a mistake in disclosing them. And we don't dispute that the department was late in disclosing these witnesses, but … Or that it violated the disclosure requirements of 213F. Aren't you really saying that given a clear 213 violation doesn't necessarily equate to a due process violation and we have to look at much more indicia of what amounts to a violation of justice or fair trial? That's exactly correct. It does not automatically equate to a due process violation. The standards are different. Rule 213F is a discovery rule that assists the court in ensuring that there's no surprise or prejudice at trial. That is the ultimate goal of Rule 213. And that's why we give the trial court, as well as in this case the commissioner, the discretion to fashion a remedy. If it was an automatic due process violation, the commissioner would not and trial courts would not have discretion in looking at the facts of the case and determining what would be appropriate. In due process, what we're looking for is whether there was a meaningful opportunity to be heard. It's a constitutional violation. Let me ask you this. Let me parse out the four-month violation, the year, and let's just go to that one-day remedy, the remedy fashioned by the court of claims. Do you think that the remedy itself could rise to a violation of due process? In certain circumstances, maybe. Not in this case because I don't think you can separate it from the fact that there was a year and a half between the disclosure and between when the plaintiffs attempted to bar these witnesses. So we have to remember that the plaintiffs didn't alert the court to this situation before. They waited until a week before the hearing to even file their motion in limine. Was there a management order where motions in limine had to be filed by a certain date? I mean, was there a scheduling order? I'm not aware of that. I'm sure that there was one. But, again, the plaintiffs – I mean, there's no claim that their motion in limine was untimely. No, that's not true. But attempting to bar the witnesses a week before trial, again, it was November, I believe, November 7th, the first week of November, and the hearing was November 14th. And so it would have actually surprised the department to not be able to make a case at all. And finding that out just within the week before the hearing. And so looking at the facts of the case here, looking to the fact that the plaintiffs were aware of these witnesses and that the department intended on calling them about a year and a half before the hearing, looking to the fact that they waited to attempt to bar them so that the department could fashion its own trial strategy until a week before the hearing. I'd like to ask you another question. Let's suppose that the plaintiff had written a letter to the state, hypothetically, that said, I got you two 13Fs, and I'm going to rely on exactly what you have said. No more, no less, and I'm not going to take their depositions. Under 201K. If they then attempted to bar them and waited, do you think the state should have another opportunity to put those witnesses on? I do think that that would change the calculus, but I do still think that allowing the plaintiffs to bar all of the state's witnesses would have been an extreme remedy. And even in your circumstance that you hypothesize here, that would be an extreme remedy because the department would not be able to defend itself at all. Well, so what? I mean, the department would have had a chance to disclose, and that's what these rules are all about. Unfair surprise. And that's true. And so then the commissioner would have to look at whether there was unfair surprise as a result of the late disclosure. And in this circumstance, even though they sent a letter indicating that they were going to rely on the 213F disclosures, you'd have to look to see whether the plaintiffs would in fact be surprised or ambushed at trial. That's really not our scope of review, right? We have to find if there's a constitutional violation here. That's really all we can do. And I completely agree with you on that. And that's all that this court can review for is whether there was a due process violation. So, again, when you look here, the court of claims did give the plaintiffs multiple opportunities to make their argument regarding this issue as well as their underlying claim and ultimately determined based on the facts of this case that it was appropriate that the department was allowed to call witnesses. And so they were able to make that argument below, and there was no due process violation here. Again, I would just like to reiterate that a Rule 213F violation does not automatically equate to a due process violation. And so unlike the plaintiff's argument, the case law does not call for that. And it doesn't call for plaintiffs to be able to assume that witnesses will be barred if they're not disclosed before the discovery close deadline. And the case law that plaintiffs does refer to reiterates the fact that it's always a factual question, whether or not they will be surprised at trial regarding a Rule 213F violation. And a due process violation is a different standard here. And here the plaintiffs were heard below in the court of claims on each of their arguments. So if this court has no further questions. No, we don't. Thank you so much. Thank you. Yes, but you affirmed the judgment of the circuit court. Are you going back to Chicago tonight? I am. Safe travels. Thank you. Mr. Romanoff. So in listening to the state's response, something kind of came up and became clear to me is more or less they'd like to shift blame. Although I think at this point the only consideration before this court is to consider whether or not there was a due process violation. If you can't answer that in the affirmative, you don't go any further. I think that's the consideration. But I think a response needs to be made with regards to this idea of 201Ks and plaintiffs' counsel touching base with defendants' counsel to more or less correct their discovery responses. They allude to this in their brief. They say we never sent a 201K. I send 201Ks at least once a day. But those are 201Ks about objections that are untimely, objections that are overbroad, vague, with no reason to do this. 213s are not something the 201K, I think, encompasses. I don't think it's my obligation to ferret out an opposing counsel's 213. I get to rely on what they're telling me. And when I make 213 arguments in front of trial courts, I often say, Judge, if you're not going to bar this testimony, they should be held to what they've disclosed. And more often than not, that's the remedy. So I think that's a point to be made. And with that, Your Honors, again, we just ask that summary judgment be reversed and just be remained. Thank you. Okay. Thank you. This matter will be taken under advisement and a disposition issued in due course. We're going to take a brief recess. Thank you. Thank you, Your Honors.